# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Trina Lipka,**

        **Plaintiff,**

**v.**                                       **Case No. 13-CV-2223**

**Advantage Health Group, Inc.;**
**Superior Senior Living, Inc.;**
**Norm Wilcox; and Kathy Wilcox,**

        **Defendants.**

## MEMORANDUM & ORDER

Plaintiff Trina Lipka filed suit against defendants alleging that defendants unlawfully terminated her employment in violation of the whistleblower provisions of the False Claims Act, 31 U.S.C. § 3730(h), and in violation of the public policy of the State of Kansas. This matter is presently before the court on defendants' motion to dismiss plaintiff's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (doc. 16). As set forth in more detail below, the motion is granted in part and denied in part.

## I.      Standard

Defendants' motion to dismiss is based on Federal Rule of Civil Procedure 12(b)(6). In analyzing the motion, the court accepts as true "all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortgage Elec. Registration Sys., Inc*., 706 F.3d 1231, 1235 (10th Cir. 2013) (citation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Free Speech v. Federal Election Comm'n*, 720 F.3d 788, 792 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).

## II.    Background

The following well-pleaded allegations, taken from plaintiff's first amended complaint, are accepted as true for purposes of defendants' motion. Defendants Norm and Kathy Wilcox own and operate defendants Advantage Health Group, Inc. and Superior Senior Living, Inc. which, in turn, provide financial and managerial support to The Gables at Overland Park Assisted Living Facility ("Gables"). On January 2, 2013, defendants, operating as a joint enterprise, hired plaintiff Trina Lipka as the Director of Nursing at Gables. As the Director of Nursing, plaintiff was responsible for the oversight of all the certified medication aides and certified nursing assistants employed at Gables by defendants.

On March 28, 2013, plaintiff was accompanied by Dr. Thomas Williams while she conducted her weekly check on sick patients throughout the Gables facility. While on "rounds," Dr. Williams instructed plaintiff to obtain a urine specimen for a patient and have it evaluated through the laboratory. Later that day, plaintiff contacted Heartland Health Laboratories ("Heartland") to inquire whether Gables could obtain urine samples for testing under the Clinical Laboratory Improvement Amendments of 1988 (CLIA), 42 U.S.C. § 263a. She also inquired about Gables' compliance with CLIA with respect to staff obtaining blood samples by

use of finger sticks to be tested via glucometer. According to plaintiff's complaint, Congress enacted CLIA to ensure the accuracy and reliability of all laboratory testing.[1] The statute contains a waiver procedure for those laboratories which only perform simple examinations and procedures having "an insignificant risk of an erroneous result." *Id.* § 263a(d)(2) and (3). A representative of Heartland advised plaintiff that Gables needed a CLIA waiver for its staff to obtain blood samples by use of finger sticks to be tested via glucometer. There are no other allegations in plaintiff's complaint concerning Gables' ability to obtain urine samples under CLIA.

Plaintiff then researched the website of the Centers for Medicare and Medicaid Services (the federal agency charged with ensuring compliance with CLIA mandates) to determine whether Gables had a CLIA waiver to obtain blood samples for testing via glucometer. Based on her research, plaintiff did not believe that Gables had a CLIA waiver. On March 29, 2013, plaintiff sent an email to Kansas Health and Environment Laboratories (KHEL), the state agency responsible for administering the CLIA program, asking whether the Gables staff could obtain blood samples by use of finger sticks to be tested via glucometer when the facility did not have a CLIA waiver. The following day, KHEL responded to the email and informed plaintiff that Gables was required to possess a CLIA waiver in order for its staff to use finger sticks for obtaining blood samples to be tested via glucometer. At that point, plaintiff informed the medical technician at Gables that Gables was required to possess a CLIA waiver for its staff to be able to obtain blood samples via finger sticks and that she did not want staff members

---

[1] All clinical laboratories must be certified under CLIA to receive Medicare or Medicaid payments and certified labs must participate in periodic quality control proficiency tests. *Wade Pediatrics v. Dep't of Health & Human Servs.*, 567 F.3d 1202, 1203 (10th Cir. 2009).

obtaining blood samples until CLIA compliance was established.  Defendant Kathy Wilcox instructed the medical technician to continue to obtain blood samples via finger sticks.

On April 1, 2013, plaintiff had a meeting with Gabby Russell, the operator of Gables, and Mrs. Wilcox concerning Gables' compliance with CLIA.  At that meeting, plaintiff informed Mrs. Wilcox and Ms. Russell about the email from KHEL and Gables' need for a waiver to obtain blood samples via finger sticks.  According to plaintiff, Mrs. Wilcox said it was "silly" that Gables would have to pay $150.00 for a waiver.  Plaintiff advised Mrs. Wilcox and Ms. Russell that defendants' current practice of obtaining blood samples without a CLIA waiver was illegal.  Ms. Russell then asked plaintiff about a lawsuit she had filed in 2008 pursuant to the False Claims Act against a former employer over the same CLIA issue.  Plaintiff explained to Ms. Russell and Mrs. Wilcox that she was notifying defendants of their illegal and fraudulent practices regarding CLIA due to her previous lawsuit filed pursuant to the FCA.

On April 2, 2013, plaintiff sent another email to KHEL informing the agency that she had advised Mrs. Wilcox and Ms. Russell that Gables needed a CLIA waiver to obtain blood samples through finger sticks for testing via glucometer and that Mrs. Wilcox had stated that she thought it was unnecessary to pay $150.00 for a CLIA waiver "since the testing was so simple." Two days later, on April 4, 2013, plaintiff was conducting her rounds and was again accompanied by Dr. Williams.  Plaintiff informed Dr. Williams that Gables did not have a CLIA waiver to obtain blood samples by use of finger sticks to be tested via glucometer.  Dr. Williams then asked Mrs. Wilcox about the CLIA waiver, who said she was "taking care of it" and she confirmed that Gables needed to obtain the waiver.  On April 5, 2013, defendant Norm Wilcox and Ms. Russell approached plaintiff in her office and advised her that her employment was

terminated effective immediately. Mr. Wilcox told plaintiff that she was terminated because defendants were "going in a different direction." Prior to her termination, plaintiff had not received any discipline regarding her performance.

## III.    FCA Whistleblower Retaliation Claim

In Count I of her Amended Complaint, plaintiff contends that defendants terminated her employment in violation of 31 U.S.C. 3730(h), which provides protections to "whistleblowers" under the False Claims Act (FCA). The FCA imposes liability on any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval." 31 U.S.C. § 3729(a)(1). The FCA authorizes individuals to bring qui tam suits on behalf of the government and keep a percentage of any monies recovered. *McBride v. Peak Wellness Center, Inc.*, 688 F.3d 698, 703 (10th Cir. 2012). Because "employees will often be in the best position to report frauds perpetrated by their employers, the FCA includes 'whistleblower' provisions protecting employees who do so from retaliation." *Id.* Whistleblowers are entitled to reinstatement, double back pay, and litigation costs and attorneys' fees. *Id.* at 703-04 (citing 31 U.S.C. § 3730(h)(2)).

To qualify for whistleblower protection, an employee "need not actually file a qui tam action," but the activity "prompting plaintiff's discharge must have been taken 'in furtherance of' an FCA enforcement action." *Id.* at 704 (quoting *United States ex rel. Ramseyer v. Centry Healthcare Corp.*, 90 F.3d 1514, 1522 (10th Cir. 1996)). In addition, a plaintiff claiming retaliatory discharge under the FCA "has the burden of pleading facts which would demonstrate that defendants had been put on notice that plaintiff was either taking action in furtherance of a

private qui tam action or assisting in an FCA action brought by the government." *Id.* Notice may be provided in a number of ways, including, by way of example, informing the employer of "illegal activities" that would constitute fraud on the United States; warning the employer of regulatory noncompliance and false reporting of information to a government agency; or explicitly informing the employer of an FCA violation. *Id*. (citations omitted).

In their motion to dismiss, defendants contend that plaintiff's first amended complaint fails to set forth allegations from which the court could reasonably infer that she engaged in activity "in furtherance of an FCA enforcement action" or that defendants had been put on notice that plaintiff was either taking action in furtherance of a private qui tam action or assisting in an FCA action brought by the government. Defendants also contend that dismissal is appropriate because plaintiff has not alleged any facts "other than the timing of her dismissal" plausibly suggesting that defendants' termination of plaintiff's employment was motivated by her reporting activities. The court addresses each of these arguments in turn.


*A. Protected Activity*

According to defendants, plaintiff has not alleged facts that could plausibly support a conclusion that she engaged in protected activity under the FCA. Defendants begin by asserting that plaintiff did not engage in any conduct in furtherance of an FCA action because the monitoring and reporting activities described in her complaint were activities plaintiff was required to perform as part of her job as Director of Nursing. While discovery may ultimately reveal that plaintiff's job responsibilities required her to investigate such matters, her complaint certainly does not indicate that she had responsibilities for investigating fraud or monitoring

compliance with Medicaid requirements. She alleges only that she was responsible "for the oversight of all the certified medication aides and certified nursing assistants employed" at Gables. The court cannot infer from that allegation that plaintiff's activities in this case stemmed solely from her job responsibilities and not in furtherance of an FCA enforcement action.

Defendants also suggest that plaintiff did not engage in protected activity because the alleged misconduct—the inadvertent (as characterized by defendants) absence of a $150.00 waiver—is so trivial as to negate the possibility of a viable qui tam action, particularly when, again according to defendants, Mrs. Wilcox "began taking care of it" within 3 days of plaintiff's April 1, 2013 warning. To begin, plaintiff does not suggest in her complaint that the absence of the waiver was inadvertent. In fact, she alleges in her complaint that Mrs. Wilcox stated that the need for the waiver was "silly" and "unnecessary" in light of the simplicity of the testing procedure. Moreover, defendants' suggesting that Mrs. Wilcox was "taking care" of obtaining the waiver on April 4, 2013 is not a fair characterization of plaintiff's complaint. Plaintiff alleges only that, when pressed by Dr. Williams about Gables not having a CLIA waiver, Mrs. Wilcox told him that she was "taking care of it."

In any event, defendants direct the court to no authority supporting their position that a $150.00 waiver is so insignificant that it would not support an FCA claim even if the employer, as alleged by plaintiff in her complaint here, was "unlawfully billing Medicaid" in the absence of the waiver. *See* Complaint ¶ 53; *see United States ex rel. Quirk v. Madonna Towers, Inc.*,

278 F.3d 765, 768 (8th Cir. 2002) (fraudulent Medicare billing can establish claim under FCA).[2]

Moreover, defendants' approach is inconsistent with Congress's intent that "protected activity" for purposes of FCA whistleblower protection be interpreted broadly. As noted by several Circuit Courts of Appeals, an employee is not required to have "developed a winning claim" under the FCA at the time of the alleged retaliation. *See id.* (citing *Yesudian*, 153 F.3d at 741); *Schuhardt v. Washington University*, 390 F.3d 563, 567 (8th Cir. 2004) (plaintiff engaged in protected activity for purposes of FCA whistleblower claim by complaining to supervisor that University's billing practices were fraudulent and unlawful and such activities were not within her job description). Indeed, a plaintiff need not even be aware of the existence of the FCA to engage in protected activity under the FCA, so defendants' further suggestion that the complaint fails because plaintiff did not allege that she was considering a qui tam action is rejected. *See Fanslow v. Chicago Mfg. Center, Inc.*, 384 F.3d 469, 479 (7th Cir. 2004) (employee need not have actual knowledge of the FCA for her actions to be considered protected activity; otherwise, only the most sophisticated individuals would be protected by the statute).[3]

The court, then, concludes that plaintiff has sufficiently pleaded facts supporting a reasonable inference that she engaged in protected activity for purposes of the FCA. Plaintiff's allegations here are sufficient to raise the inference that she was investigating matters that

---

[2] Defendants' argument that plaintiff has failed to plead that defendants submitted a false or fraudulent claim to the government is directly contradicted by paragraph 53 of plaintiff's Amended Complaint.

[3] Defendants' insistence that plaintiff is required to plead facts showing that defendants' conduct was illegal or fraudulent improperly confuses the elements of a substantive FCA claim with the elements of an FCA whistleblower claim. *See Mendiondo v. Centinela Hosp. Med. Center*, 521 F.3d 1097, 1103 (9th Cir. 2008) (to state an FCA retaliation claim, a plaintiff need not plead or prove that the defendant actually submitted a knowingly false claim).

reasonably could lead to a viable FCA case. *United States ex rel. Yesudian v. Howard University*, 153 F.R.D. 731 (D.C. Cir. 1998) (plaintiff acts in furtherance of FCA enforcement action when he or she investigates matters that reasonably could lead to a viable FCA case) (collecting cases in accord); *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 237 (1st Cir. 2004) (protected activity includes investigations that concern the employer's knowing submission of false or fraudulent claims for payment to the government). Specifically, she alleges that she contacted KHEL to determine whether a CLIA waiver was necessary to perform the testing at issue; that KHEL informed her that a waiver was required; and that she investigated whether Gables had the waiver and determined that it did not. She further alleges that she informed Mrs. Wilcox and Ms. Russell on April 1, 2013 that she had been in contact with KHEL; that Gables in fact needed a waiver to obtain blood samples by finger sticks; that Gables was not in compliance with CLIA in the absence of the waiver; that Gables' current practice was "illegal;" and that she was notifying defendants "of their illegal and fraudulent practices regarding CLIA due to her previous lawsuit filed pursuant to the FCA." These allegations are buttressed by the allegation in paragraph 53 of plaintiff's Amended Complaint wherein she asserts that she advised defendants that she had engaged in "protected activity . . . which included investigating Defendants' practices and voluntarily disclosing to a third-party government agency in charge of administering the CLIA program in the State of Kansas that the Defendants were unlawfully billing Medicaid." Defendants' motion to dismiss on this issue is denied.


*B. Notice*

Defendants contend that plaintiff has not pled sufficient facts which would demonstrate that defendants had been put on notice that plaintiff was taking action in furtherance of a private qui tam action. According to defendants, plaintiff's communications to her employer about the CLIA waiver issue amounted to no more than "grumblings" about regulatory violations that do not satisfy the notice requirement. Defendants characterize plaintiff's communications as simply informing Mrs. Wilcox and Ms. Russell that Gables "cannot conduct finger sticks without the waiver." But even the most cursory review of plaintiff's complaint reveals that her April 1, 2013 communications with Mrs. Wilcox and Ms. Russell, at least as alleged in the complaint, went far beyond notifying them that Gables could not conduct such tests without a CLIA waiver. She specifically alleges that she informed Mrs. Wilcox and Ms. Russell that she had been in contact with KHEL; that Gables in fact needed a waiver to obtain blood samples by finger sticks; that Gables was not in compliance with CLIA in the absence of the waiver; that Gables' current practice was "illegal;" and that she was notifying defendants "of their illegal and fraudulent practices regarding CLIA due to her previous lawsuit filed pursuant to the FCA"—a lawsuit that, according to plaintiff's complaint, concerned the same CLIA issue. Taken together, these allegations are sufficient to create a reasonable inference that defendant had notice that there was a distinct possibility that she would sue defendants under the FCA. *United States ex rel. Sanchez v. Lymphatx, Inc*., 596 F.3d 1300, 1304 (11th Cir. 2010) (at pleading stage, allegations that plaintiff complained about "unlawful actions" and warned that they were incurring significant civil and criminal liability were sufficient to support a reasonable conclusion that the defendants were aware of the possibility of litigation under the FCA); *United States ex rel. Nowak v. Medtronic, Inc*., 806 F. Supp. 2d 310, 340 (D. Mass. 2011) (the

10

employer must be on notice that the employee is engaged in conduct that reasonably could lead to a False Claims Act case).[4]

Defendants suggest that, consistent with *McBride*, plaintiff is required to plead facts showing that she made clear her intention "of bringing or assisting in an FCA action in order to overcome the presumption that [she was] merely acting in accordance with [her] employment obligations." *McBride*, 688 F.3d at 704 (quoting *Ramseyer*, 90 F.3d at 1523 n.7). In *McBride*, the plaintiff was a certified public accountant and the business manager of the defendant; her job responsibilities included ensuring that the defendant's use of grant money complied with applicable accounting principles and the concerns she raised involved the improper use of grant money. *Id*. at 702. Because the investigation of those kinds of issues was simply part of her job, her statements about the defendant's lack of compliance would not necessarily indicate to the defendant that she was planning to report illegal activities or initiate a qui tam action. *Id*. at 704. The plaintiff in *McBride*, then, was required to make a "clearer indication" that she was planning to file a qui tam suit. As further clarified in *Ramseyer*, only those persons "whose job entails the investigation of fraud" must make clear their intentions of bringing or assisting in an FCA action. 90 F.3d at 1523 n.7; *accord United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 729 (10th Cir. 2006) (plaintiff's duties included monitoring

_____

[4] Defendants assert in their reply brief that a reasonable inference of notice is not enough to save plaintiff's FCA claim—rather, she must "demonstrate" that defendants had the requisite notice. Defendants rely on the Tenth Circuit's *McBride* decision in support of this contention. *McBride*, of course, is an appeal from a summary judgment decision. At the Rule 12(b)(6) stage, a plaintiff's allegations must only permit a reasonable inference of the facts underlying each element of the cause of action. *See Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013) (under *Twombly* and *Iqbal*, pleadings must allow for "at least a reasonable inference" of the legally relevant facts supporting each element of the cause of action).

compliance with Medicare requirements such that she was required to clearly plead defendant's notice of her intention to bring an FCA action).

There is simply no indication that the Tenth Circuit, in the context of an employee who is not responsible for investigating fraud (or, more accurately in the context of this case, monitoring compliance with Medicaid requirements), would require that employee to "make clear her intentions to bring or assist in an FCA action."  Plaintiff alleges in her complaint that she was employed by defendants as the Director of Nursing at Gables and that she was responsible "for the oversight of all the certified medication aides and certified nursing assistants employed" at Gables.  As noted earlier, nothing in her complaint suggests that she had responsibilities for investigating fraud or monitoring compliance with Medicaid requirements. In such circumstances, the court believes that the Circuit would follow the decisions of other Circuits and hold that plaintiff here need not meet the heightened requirements for employees whose job descriptions include responsibilities for investigating fraud or monitoring Medicaid compliance in order to establish a § 3730(h) retaliation claim.  *See Schuhardt v. Washington University*, 390 F.3d 563, 668 & n.2 (8th Cir. 2004) (reversing grant of summary judgment for employer on FCA retaliation claim where plaintiff's responsibilities did not include investigation of fraud; evidence that she told her supervisors that the University's billing practice was fraudulent and illegal was sufficient to overcome motion for summary judgment on notice issue); *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 238-39 (1st Cir. 2004) (plaintiff, a respiratory therapist employed by hospital, satisfied pleading requirements on Rule 12(b)(6) motion concerning knowledge element of § 3730(h) by alleging

that he notified his employer that he was investigating the employer's knowing presentation of false or fraudulent claims for payment to the government).

For the foregoing reasons, plaintiff has sufficiently pleaded facts which would demonstrate that defendants had notice that plaintiff was taking action in furtherance of a private qui tam action.

*C. Causal Connection*

Finally, defendants contend that plaintiff has failed to allege facts supporting a reasonable inference that her protected activity motivated the decision to terminate her employment. This argument lacks merit. Defendants concede that the timing of the termination decision supports a causal connection—she alleges that she was terminated just 4 days after notifying Mrs. Wilcox and Ms. Russell about the CLIA waiver requirement; her communications with KHEL; Gables' noncompliance with the requirement; her belief that defendants' current practice of obtaining blood samples by use of finger sticks without a CLIA waiver was "illegal"; and that she was coming forward with the information regarding CLIA "due to her previous lawsuit filed pursuant to the FCA."

Defendants, however, contend that the temporal proximity between plaintiff's protected activity and her termination is insufficient to create the inference of a causal connection. The court disagrees and finds, quite clearly, that plaintiff has alleged facts more than sufficient to create a reasonable inference that a causal connection exists between her alleged protected activity and the termination decision. *See Thompson v. Quorum v. Health Resources, LLC*, 485 Fed. Appx. 783, 792 (6th Cir. 2012) (termination one month after learning that employee filed

an FCA suit gives rise to inference of retaliatory motive); *United States ex rel. Parato v. Unadilla Health Care Center, Inc.*, 787 F. Supp. 2d 1329, 1345 (M.D. Ga. 2011) (denying summary judgment on FCA whistleblower claim where CEO was terminated within one week of Board receiving CEO's memorandum detailing her allegations of the center's regulatory noncompliance and illegal activity).

## IV.    Retaliatory Discharge

In Count II of her Amended Complaint, plaintiff alleges that defendants terminated her employment in violation of Kansas' public policy exception to the employment-at-will doctrine. Defendants move to dismiss this claim on the grounds that the anti-retaliation provision of the FCA adequately protects the state's interest against Medicaid fraud and provides plaintiff with a sufficient remedy for the allegedly retaliatory discharge.    Relying on the Tenth Circuit's decision in *Conner v. Schnuck Markets, Inc*., 121 F.3d 1390 (10th Cir. 1997), wherein the Circuit held that that Kansas Supreme Court would not allow a common law cause of action for retaliatory discharge when an adequate statutory remedy exists under federal law, defendants contend that plaintiff's state law retaliatory discharge claim is precluded.    *See Campbell v. Husky Hogs, LLC,* 292 Kan. 225, 236 (2011) ("Under the alternative remedies doctrine, a state or federal statute could be substituted for a state retaliation claim—if the substituted statute provides an adequate alternative remedy.").[5]

---

[5] As a threshold matter, defendants contend that plaintiff has conceded that dismissal of the state law claim is appropriate by filing an Amended Complaint in response to defendants' initial motion to dismiss, which raised the alternative remedy issue, without addressing that issue in any respect and simply reasserting the claim in the Amended Complaint.  Plaintiff urges that she

Of course, the alternative remedies doctrine applies only when the statutory claim and common law claim seek to redress the same harm. *See id.* In light of this principle, some courts have determined that an FCA claim is not an adequate, alternative remedy when the common law claim clearly encompasses conduct beyond violations of the FCA. *See Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 277 F.3d 936, 943-44 (7th Cir. 2002) (FCA did not provide alternative path because it addressed a smaller set of cases than the state tort and it was unclear whether plaintiff's conduct qualified for protection under FCA); *United States ex rel. Miller v. Weston Educational, Inc.*, 2012 WL 6190307, at *13-14 (W.D. Mo. Dec. 12, 2012) (common law retaliatory discharge claim not precluded by FCA where common law claim was not based solely on employer's allegedly retaliatory response to efforts to expose and prevent FCA violations but also on alleged violations of statutes and regulations beyond scope of FCA).

A review of the allegations pled in connection with plaintiff's common law claim sheds little light on the issue of whether that claim is intended to address the same harm as her FCA claim. Plaintiff does not reference any FCA violations in Count II, but simply refers generally to her reporting of "illegal conduct" and "improper actions." However, in the introductory allegations of plaintiff's First Amended Complaint, she states that her common law claim and her FCA claim "are pled in the alternative" and, importantly, she does not suggest in her submissions that her FCA claim and her common law claim address different harms. The court

---

did not intend to concede the claim. The court rejects this argument in favor of resolving defendants' motion on the merits and declines to base any dismissal on grounds asserted in the initial motion to dismiss when the court mooted that motion upon the filing of the Amended Complaint.

concludes, then, that plaintiff's common law retaliatory discharge claim is limited to defendant's allegedly retaliatory response to plaintiff's exercise of her rights under the FCA.

Despite the fact that her common law claim seeks to remedy the same wrong as her FCA claim, plaintiff urges that the FCA cannot provide an adequate alternative remedy because she is not able to recover compensatory or punitive damages under the FCA. This statement is not entirely accurate. In fact, the FCA's provision for "special damages" encompasses damages for emotional distress. *See Thompson v. Quorum Health Resources, LLC*, 485 Fed. App'x 783, 788 (6th Cir. June 22, 2012) (noting successful plaintiff's award under FCA included back pay, front pay, and pain and suffering damages); *Hammond v. Northland Counseling Center, Inc*., 218 F.3d 886, 892-93 (8th Cir. 2000); *Neal v. Honeywell, Inc*., 191 F.3d 827, 832 (7th Cir. 1999) (damages for emotional distress are compensable under FCA as special damages); *McKenna v. Senior Life Mgmt., Inc*., 429 F. Supp. 2d 695, 699 n.5 (S.D.N.Y. 2006) ("Damages for emotional distress, as well as an award for future earnings in place of reinstatement, have been permitted under the [FCA's] statutory provision for 'special damages.'").

While the FCA does provide for double back pay, it does not provide for punitive damages. *See* 31 U.S.C. § 3730(h)(2). According to plaintiff, the Kansas Supreme Court in *Hysten v. Burlington N. Santa Fe Ry. Co*., 108 P.3d 437 (Kan. 2004), squarely held that a statute that does not provide for punitive damages cannot present an adequate alternative remedy for a common law retaliatory discharge claim. The court disagrees with plaintiff's interpretation of *Hysten*. Rather, *Hysten* "made clear that the lack of punitive damages can be a factor in determining adequacy." *Conus v. Watson's of Kansas City, Inc*., 2011 WL 4348315, at *3 (D. Kan. Sept. 16, 2011) (citing *Hysten*, 108 P.3d at 445). In *Hysten*, the Court examined whether

the Federal Employers' Liability Act provided an adequate alternative remedy to a Kansas common law retaliation claim and concluded that the remedy under FELA was inadequate. *Hysten*, 108 P.3d at 445. But in reaching that decision, the Court was influenced not only by the differences in available damages, but also by the "lack of process and claimant control." *Conus*, 2011 WL 4348315, at *3 (explaining that the "main focus" of *Hysten* was not the unavailability of punitive damages but the process available for relief and the litigant's ability to control its own private action in federal court).

Moreover, the Kansas Supreme Court has suggested that both the FLSA and the Energy Reorganization Act (ERA) provide adequate alternative remedies to a common law retaliatory discharge claim despite the fact that those statutes do not provide for punitive damages. *See Flenker v. Willamette Indus.*, 967 P.2d 295, 299, 301 (1998) (citing with approval *Masters v. Daniel Int'l Corp.*, 917 F.2d 455, 457 (10th Cir. 1990) and explaining that Masters held that the ERA provided an adequate remedy; further suggesting that the FLSA, as compared to OSHA, provided an adequate remedy because the employee may obtain "any type of relief possible under the FLSA through the employee's own actions" rather than only that relief deemed appropriate by the Secretary of Labor). And, more recently, the Kansas Supreme Court has clarified that the proper focus in determining whether a statute provides an adequate remedy for a common law retaliatory discharge claim is whether the statute allocates the common law action to an administrative agency. *See Campbell*, 292 Kan. at 237 (explaining that the Court has consistently criticized the allocation of a common law action to an administrative agency because administrative actions typically involve disparate processes with less claimant control and no right to a jury trial and disparate remedies).

In light of the foregoing, the court believes that the Kansas Supreme Court would find that plaintiff's common law retaliatory discharge claim here is precluded by the FCA because the FCA provides an adequate alternative remedy for the common law claim despite the absence of punitive damages. A whistleblower claim under the FCA lacks the administrative component that caused the Kansas Supreme Court concern in *Hysten*, *Flenker* and *Campbell*. Unlike the statutory schemes examined in those cases, the FCA provides a whistleblower with the right to file a civil action in federal district court, to a trial by jury, and to "all relief" necessary to make the plaintiff "whole," including reinstatement with full seniority, double back pay, interest on the back pay, and compensation for special damages, plus costs and reasonable attorneys' fees. 31 U.S.C. § 3730(h). Thus, the anti-retaliation provision of the FCA adequately protects the state's public policy and provides plaintiff with a sufficient remedy for the allegedly retaliatory discharge. The court, then, grants defendants' motion to dismiss this claim.[6]

## V.    Proper Defendants

In her First Amended Complaint, plaintiff alleges that she was employed by all defendants—advantage Health Group, Inc.; Superior Senior Living, Inc.; Norm Wilcox; and Kathy Wilcox—by virtue of the joint or integrated enterprise doctrine. Specifically, plaintiff alleges that Mr. and Mrs. Wilcox own and operate the corporate defendants; that the corporate defendants were jointly managed and operated by Mr. and Mrs. Wilcox; that the corporate

---

[6] Because the preclusion issue must be resolved based on Kansas Supreme Court precedent, *see Flenker*, 967 P.2d at 299, the court is not persuaded by the small handful of federal district court cases cited by plaintiff that have concluded, after carefully examining pertinent state court precedent, that the FCA does not preclude a common law retaliatory discharge claim under the precedent of the various states (but not Kansas) examined in those cases.

defendants employed the same personnel; and that the corporate defendants jointly provided financial and managerial support to Gables. Finally, plaintiff alleges that all defendants had the authority to direct and control plaintiff's employment.

The corporate defendants move to dismiss plaintiff's claims against them on the grounds that plaintiff has not alleged facts that would justify piercing the corporate veil under the Tenth Circuit's decision in *NLRB v. Greater Kansas City Roofing*, 2 F.3d 1047, 1051-52 (10th Cir. 1993). That case, however, concerned the veil-piercing doctrine under an alter ego theory. *Id.* at 1052. The alter ego theory, of course, is entirely distinct from the integrated enterprise theory asserted by plaintiff in her First Amended Complaint. *See Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362 & n.2 (10th Cir. 1993). Because the corporate defendants have not otherwise challenged plaintiff's assertion that the corporate defendants may be held liable under a joint enterprise theory, and because the court has uncovered no cases indicating that the joint enterprise test, as a matter of law, would not apply to FCA whistleblower claims, the court denies defendants' motion on this issue. *See Campion v. Northeast Utilities*, 598 F. Supp. 2d 638, 656 n. 12 & 13 (M.D. Pa. 2009) ("it is certainly debatable whether the integrated enterprise test . . . should be applied in the context of FCA anti-retaliation claims"); *Thompson v. Quorum Health Res., LLC*, 2007 WL 2815972, at *3 (W.D. Ky. Sept. 27, 2007) (assuming without deciding that integrated enterprise test applies to § 3730(h)).

The individual defendants move to dismiss plaintiffs' claims against them on the grounds that, as individuals, they cannot be "employers" within the meaning of the FCA. In support of their argument, the individual defendants rely primarily on the D.C. Circuit's opinion in *United States ex rel. Siewick v. Jamieson Science and Engineering, Inc.*, 322 F.3d 738 (D.C. Cir. 2003).

While the *Siewick* decision persuasively held that an individual is not an "employer" within the meaning of § 3730(h), that decision was based on the pre-2009 version of the FCA that expressly limited the scope of 3730(h) to "employers."  *See* 31 U.S.C. 3730(h) (2003) ("Any employee who is discharged . . . by his or her employer . . . shall be entitled to all relief necessary  . . . ."); *Yesudian ex rel. United States v. Howard Univ.*, 270 F.3d 969 (D.C. Cir. 2001) ("Section 3730(h) plainly mentions only the 'employer' as incurring liability").

Section 3730(h), however, was amended in 2009 to expand protection from employees to employees, contractors and agents and to eliminate the word "employer."  Pub. L. No. 111-21, § 4(d), 123 Stat. 1617, 1624-25 (2009).  As amended, the statute now reads:

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, or agent or associated others in furtherance of other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1).  The amendment applies to conduct on or after May 20, 2009, *see* Pub. L. No. 111-21, § 4(f), 123 Stat. 1617, 1624-25 (2009), and so clearly applies to plaintiff's April 2013 discharge.  For this reason, defendants' exclusive reliance on pre-Amendment cases is misplaced and not helpful to the court's analysis of the issue.

Since the 2009 amendment to § 3730(h), a handful of district courts have denied Rule 12(b)(6) motions seeking to dismiss individual defendants from FCA whistleblower cases on the grounds that the amendment, by removing the word "employer," gives rise to individual liability under § 3730(h).  *See United States ex rel. Moore v. Community Health Servs., Inc*., 2012 WL 1069474, at * (D. Conn. Mar. 29, 2012) (allegations regarding post-Amendment conduct give

rise to FCA retaliation claim against individual defendants); *Weihua Huang v. Rector & Visitors of Univ. of Virginia*, 896 F. Supp. 2d 524, 548 n.16 (W.D. Va. 2012) (declining to dismiss individual liability claims "out of hand" in the absence of guidance from the Fourth Circuit where the 2009 amendment, by eliminating the reference to "employers" as defendants in § 3730(h)(1), effectively "left the universe of defendants undefined and wide-open"); *Laborde.v. Rivera-Dueno*, 719 F. Supp. 2d 198, 205 (D.P.R. 2010) (in the absence of specific First Circuit guidance holding that individual liability does not exist in FCA retaliation claims, and in light of amended version of statute, court denied Rule 12(b)(6) motion to dismiss individual defendants). None of these decisions, however, examine the legislative history underlying the 2009 Amendment.

Those cases that have examined the legislative history have concluded that the 2009 Amendment was intended to correct what "Congress viewed as the unduly narrow interpretation that the courts have given to the term "employee"" such that the statute was changed to prohibit retaliation against "any employee, contractor or agent." *United States ex rel. Abou-Hussein v. Science Applications Int'l Corp*., 2012 WL 6892716, at *3 (D.S.C. May 3, 2012) (citing S. Rep. No. 110–507, 110th Cong., 2nd Session (September 25, 2008), 2008 WL 4415147 at *26–27). Rejecting the argument that Congress, by removing the word "employer," intended to extend liability to non-employers, the court in *Abou-Hussein* explained that by extending protection to independent contractors and agents, the statute "by necessity . . . could no longer refer only to 'employers.'" *Id*. at *3 n.4. As the court further explained:

> [T]he removal of the term 'employer' by the 2009 amendment to § 3730(h) was a
> device to accommodate the broader group of potential plaintiffs who are in
> employee type roles but who may not technically be employees and the broader

> group of potential defendants who are in employer type roles but may not
> technically be employers. There is no indication in the revised statutory language
> of the 2009 amendments or in the legislative history that indicates a Congressional
> intent to broaden the scope of § 3730(h) to include potential defendants who have
> no employer type relationship with plaintiffs.

*Id.*

In *Howell v. Town of Ball*, 2012 WL 6680364 (W.D. La. Dec. 21, 2012), the court

dismissed an FCA whistleblower claim against individual defendants after concluding that the

2009 amendments to § 3730(h), consistent with the legislative history of the amendment, reflect

an intention by Congress to "add protection against retaliation against contractors and agents of

the discriminating party who have been denied relief by some courts because they are not

technically employees." *Id.* at *2 (quoting argument of U.S. Representative Howard L.

Berman). The court in *Howell* found that the following language in the Senate Report clearly

supported the conclusion that the removal of the word "employer" was not intended to "grant a

federal right of action against anyone and everyone":

> The effectiveness of the False Claims Act has recently been undermined by court
> decisions which limit the scope of the law and, in some cases, allow
> subcontractors paid with Government money to escape responsibility for proven
> frauds. The False Claims Act must be corrected and clarified in order to protect
> from fraud the Federal assistance and relief funds expended in response to our
> current economic crisis.

*Id.* at *2.

Similarly, in *Aryai v. Forfeiture Support Associates, LLC*, 2012 U.S. Dist. LEXIS

125227, at *27 (S.D.N.Y. Aug. 27, 2012), the court granted the individual defendants' Rule

12(b)(6) motion on the grounds that individuals cannot be held liable under § 3730(h) even after

the 2009 amendments to § 3730(h). Relying on the House Report, the court in *Aryai* explained:

Congress intended for the amendment to "broaden protections for whistleblowers by expanding the False Claims Act's anti-retaliation provision to cover any retaliation against those who planned to file an action (but did not), people related to or associated with relators, and contract workers and others who are not technically 'employees.'" H.R. Rep. No. 111-97, at 14 (2009). The Report contains no similar statement of intent to expand the scope of liability to include individuals. Where Congress expressly stated its intent to expand the definition of a whistleblower and added specific language to effectuate that intent, it strains common sense to read Congress's silence in the same sentence of the statute as effectuating an unexpressed intent to expand the class of defendants subject to liability under the statute.

This is particularly true in light of the aforementioned presumption that Congress was aware that courts had uniformly rejected individual liability under section 3730(h). Thus, if plaintiff is correct, Congress overturned this line of authority by negative implication. That seems unlikely given that Congress could have simply replaced "employer" with "any person." Indeed, Congress has used that phrase in several anti-retaliation statutes. That Congress chose not to use that phrase . . . makes it more likely that Congress deleted the word "employer" not to provide for individual liability but to avoid confusion in cases involving a "contractor or agent" rather than an "employee."

*Id*. at *23-25 (footnote and citations omitted).

The decisions in *Abou-Hussein*, *Howell* and *Aryai* are far more persuasive to the court than those cases that summarily decided the individual liability issue without reference to the legislative history of the statute. Because the court cannot improve on the analysis provided in those decisions, the court simply agrees that that the 2009 amendment to § 3730(h) was not intended to provide for individual liability and, that, consistent with the way in which the vast majority of courts resolved the issue prior to the amendment, § 3730(h) does not contemplate individual liability for FCA whistleblower retaliation. The court dismisses plaintiff's FCA retaliation claim against defendants Norm and Kathy Wilcox.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion to dismiss plaintiff's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (doc. 16) is granted in part and denied in part. The court dismisses plaintiff's common law retaliatory discharge claim and dismisses plaintiff's FCA whistleblower claim against defendants Norm and Kathy Wilcox.

**IT IS SO ORDERED.**

Dated this 20th day of September, 2013, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge